[No. 11447-3-III.    Division Three.    August 6, 1992.]

JOSEPH TINCANI, ET AL, *Respondents,* v. INLAND EMPIRE
ZOOLOGICAL SOCIETY, *Appellant.*

*Daniel E. Huntington* and *Richter-Wimberley, P.S.,* for appellant.

*Timothy B. Fennessy* and *D.E. McKelvey, Jr., P.S. & Associates* (*Robert McAllister,* of counsel), for respondents.

SWEENEY, J. — While on a school field trip to the Inland Empire Zoological Society d.b.a. Walk in the Wild Zoo (the Zoo), Richard Tincani was seriously injured when he lost his footing and fell approximately 20 feet down a rock cliff. By special verdict, the jury allocated fault: 65 percent to Mr. Tincani, 10 percent to the Moses Lake School District, and 25 percent to the Zoo. The Zoo moved for a judgment notwithstanding the verdict. The court denied the motion and entered judgment on the verdict. The Zoo appeals. We affirm.

FACTS

On November 12, 1987, Mr. Tincani, along with 39 eighth and ninth grade students from Frontier Junior High School in Moses Lake, went on a field trip to several points of interest in Spokane. The students were accompanied by the school principal, two teachers and four parents. Mr. Tincani was 14 years 11 months old at the time of the trip.

In the afternoon, the group visited the Zoo, a 240-acre enclosure located in the Spokane Valley. The Zoo is designed to simulate a nature hike. Animals are exhibited in natural settings; some are caged, others roam free. Maps available at the entrance included the statement: "Stay on the main trail". The Zoo has a number of unmarked paths and trails resulting from erosion and animals, none of which are depicted on the maps.

Before they entered the Zoo, the students were told by Larry Koester, the teacher who organized the trip, to be responsible and conduct themselves as adults. He encouraged the students to explore whatever interested them in the Zoo and to see as many animals and forms of wildlife they could locate. Each student paid a $1 admission fee.

Zoo employee Marilyn Omlor had scheduled the group's field trip to the Zoo. Upon their arrival, she asked Mr. Koester if he knew the rules of the Zoo; he responded yes. Ms. Omlor did not question him or discuss the rules further. The Zoo's chaperon policy required a ratio of one adult to every six children visiting the Zoo. The Zoo also had a rule requiring that visitors stay on the main trail. A 2- by 4-foot sign at the entry turnstiles notified visitors to "Stay on the main trail". Ms. Omlor testified that the Zoo did not enforce the chaperon policy. The Zoo was aware visitors often followed paths off the main trail.

At the entrance gate, Ms. Omlor handed Mr. Koester about 20 visitor maps. He turned to a person in his group and asked that the maps be distributed. Mr. Tincani did not

receive a map. The Zoo did not inform Mr. Tincani of any limitations imposed on his visit.

Accompanied by four of his schoolmates, Mr. Tincani headed down the main trail in a counterclockwise direction trying to locate horses and eagles. The boys were not accompanied by an adult chaperon. They continued down a fork in the trail believing they were still on the main trail. At a second fork in the trail, Mr. Tincani left the group and followed a gentle upward slope to the left. The path meandered; it had been walked on before but was not a distinctive trail.

Mr. Tincani was out of his companions' view for a few minutes. Jorge Rodriquez, one of the boys, next saw Mr. Tincani on top of a rock cliff. Mr. Tincani called out to Mr. Rodriquez and asked him to wait. Mr. Tincani was unsuccessful in his attempt to climb down. He returned to the top of the rock cliff. Before Mr. Rodriguez could say anything, Mr. Tincani yelled that he had found a way down. He proceeded down natural steps in the rock formation and attempted to jump 3 feet to a ledge. Mr. Tincani lost his footing and fell approximately 20 feet to the ground. He suffered serious injury and has no recollection of his visit to the Zoo.

### PROCEDURAL HISTORY

Mr. Tincani and his parents sued the Moses Lake School District, the teachers who accompanied the students, the Zoo, and the Zoo's general manager. Following a settlement with the school district and dismissal of the other defendants, Mr. Tincani proceeded against the Zoo.

The Zoo moved for summary judgment, on the grounds it had no duty to warn Mr. Tincani of the dangers associated with the rock cliff and Mr. Tincani's conduct was an implied primary assumption of the risk. The court denied the motion.

At trial, a witness testifying on Mr. Tincani's behalf violated an order in limine by making two inadvertent refer-

ences to the Zoo's insurance agent. The Zoo moved for a mistrial; the motion was denied. At the close of the evidence, the Zoo moved for a directed verdict on the basis it had no duty to prevent Mr. Tincani from encountering a known obvious natural condition. The court denied the motion.

The jury returned a verdict in favor of Mr. Tincani for $1,044,199.66, but determined he was 65 percent at fault, the Zoo 25 percent at fault, and the school district 10 percent. By special interrogatory, the jury found Mr. Tincani's status to be that of a licensee at the time he fell. Judgment in the amount of $261,049.92 was entered against the Zoo in favor of Mr. Tincani. The Zoo moved for judgment notwithstanding the verdict and/or for a new trial. The motion was denied. This appeal follows.

## CONTENTIONS ON APPEAL

The Zoo contends the court erred in denying the motion for a judgment notwithstanding the verdict because (1) irrespective of Mr. Tincani's status as either an invitee or a licensee, the Zoo had no duty to warn Mr. Tincani of the risks associated with climbing up the rock cliff; (2) the court erred in several of its instructions to the jury regarding the duty owed by a zoo operator; (3) Mr. Tincani's conduct constituted implied primary assumption of a specific risk of harm which is a complete bar to his recovery; (4) the court commented on the evidence; and (5) a witness referred to the Zoo's liability insurance.

## STANDARD OF REVIEW

In reviewing a motion for a judgment notwithstanding the verdict, this court applies the same standard as the trial court. *Industrial Indem. Co. of the Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 915, 792 P.2d 520 (1990). A judgment notwithstanding the verdict is appropriate if, when viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict. *Industrial Indem.*, at 915-16; *Hojem v. Kelly*, 93

Wn.2d 143, 145, 606 P.2d 275 (1980). The court must accept the truth of the nonmoving party's evidence and draw all reasonable inferences in the light most favorable to the party against whom the motion is made. *Douglas v. Freeman*, 117 Wn.2d 242, 247, 814 P.2d 1160 (1991). The requirement of substantial evidence necessitates that the evidence be such that it would convince " 'an unprejudiced, thinking mind' ". *Industrial Indem.*, at 916 (quoting *Hojem*, at 145).

## DUTY TO WARN

The Zoo first contends that irrespective of Mr. Tincani's status upon the land as an invitee, licensee, or trespasser, the Zoo had no duty to warn him of a known natural condition.[1] The Zoo asserts that because the danger of climbing on the cliff was known to Mr. Tincani, the Zoo owed no duty to protect him from the injuries he received.

A cause of action founded on negligence requires that a plaintiff establish the existence of a duty to the plaintiff. *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 802 P.2d 1360 (1991). We disagree with the Zoo's assertion that it owed no duty to Mr. Tincani.

■ The rule that the liability of a possessor of land is generally dictated by the status of the injured party is not without exception:

> Where activities are carried on by the possessor of land, we have imposed a *duty of exercising reasonable care not to injure a child* of whose presence the possessor or his agents is aware, *regardless of the child's status*, even though no "attractive nuisance" is involved. . . .
> *Thus where there is negligence which causes injuries to a child, the law of this state affords a remedy.*

(Italics ours.) *Ochampaugh v. Seattle*, 91 Wn.2d 514, 527, 588 P.2d 1351 (1979); *see Helland v. Arland*, 14 Wn.2d 32, 126 P.2d 594 (1942). A possessor of land owes a duty to use reasonable care not to injure a child "regardless of [the

---

[1] The jury was instructed that the determination of whether the Zoo owed Mr. Tincani a duty depended upon the common law classifications of entrants upon land — invitees, licensees and trespassers.

child's] status at the site of the accident." *Sherman v. Seattle*, 57 Wn.2d 233, 242, 356 P.2d 316 (1960).

Mr. Tincani was 14 years old when he was injured at the Zoo. He was induced to come onto the land by the Zoo because of the activities conducted on the property. The Zoo owed him a duty of reasonable care, irrespective of his status on the property. *Ochampaugh*, at 527. The Zoo not only occupied the land where this accident occurred, it conducted a business on that land.

The Zoo's reliance on *McDermott v. Kaczmarek*, 2 Wn. App. 643, 469 P.2d 191 (1970) and *Ochampaugh v. Seattle*, *supra*, is not persuasive. In *McDermott*, a child trespassed onto an unimproved and undeveloped parcel of land with an exposed 40-foot rock cliff. The child's father had frequently warned him of the dangers in playing near the cliff. The court determined the possessor of land had no liability based upon the attractive nuisance doctrine. In *Ochampaugh*, two boys trespassed onto land and drowned in a pond which had formed as a result of excavation more than 50 years earlier. The court ruled that natural bodies of water do not constitute dangers within the attractive nuisance doctrine.

The possessors of land in *McDermott* and *Ochampaugh* did nothing to encourage children to enter the land. In both decisions, the children were trespassers and the land they entered was undeveloped and unimproved. Neither was induced to come on the property by the owner or occupier of the land.

In contrast, the Zoo developed and operated an enclosed parcel of land as *a walk in the wild*. Entrance and exploration was encouraged, particularly by children. An admission fee was charged. The Zoo included improved paths, fencing, warning signs, as well as rules and regulations promulgated to protect the animals. It is that business activity which gave rise to liability here.

The jury found the Zoo was negligent. There is substantial evidence to support that verdict and it will not be disturbed on appeal.

INSTRUCTIONS TO THE JURY

The Zoo contends the court erred in several of its instructions to the jury. The claimed errors relate to Mr. Tincani's status on the property — invitee, licensee, trespasser. In view of our holding, we need not address the contentions.

IMPLIED PRIMARY ASSUMPTION OF RISK

The Zoo contends Mr. Tincani's act of climbing the rock cliffs was an implied primary assumption of the risk and was therefore a complete bar to his recovery. It is the Zoo's position that Mr. Tincani understood the risk and voluntarily chose to encounter it. *Kirk v. WSU*, 109 Wn.2d 448, 746 P.2d 285 (1987); Restatement (Second) of Torts § 496C(1) (1965).

■ An implied primary assumption of risk arises when a plaintiff consents to relieve a defendant of a duty he or she is owed regarding specific known risks. *Kirk*, at 453; Restatement (Second) of Torts § 496C(1).[2] While comparative negligence involves a breach of an objective reasonable standard of care, assumption of the risk involves a knowing encounter of danger and a subjective standard of conduct. *Ridge v. Kladnick*, 42 Wn. App. 785, 788, 713 P.2d 1131, *review denied*, 106 Wn.2d 1011 (1986).

To establish primary assumption of risk, the evidence must show the plaintiff (1) had full subjective understanding, (2) of the presence and nature of the specific risk, and (3) voluntarily chose to encounter the risk. *Kirk*, at 453 (citing W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 68, at 487 (5th ed. 1984); Restatement (Second) of Torts § 496C(1)). *See Leyendecker v. Cousins*, 53 Wn. App. 769, 773, 770 P.2d 675, *review denied*, 113 Wn.2d 1018 (1989). The test for whether a person voluntarily assumed a risk is subjective: Whether the plaintiff in fact

---

[2]Restatement (Second) of Torts § 496C(1) provides in pertinent part: "[A] plaintiff who fully understands a risk of harm to himself or his things caused by the defendant's conduct or by the condition of the defendant's land or chattels, and who nevertheless voluntarily chooses to enter or remain, . . . under circumstances that manifest his willingness to accept it, is not entitled to recover for harm within that risk."

understood the risk. *Shorter v. Drury*, 103 Wn.2d 645, 656-57, 695 P.2d 116, *cert. denied*, 474 U.S. 827 (1985). The issue of voluntariness is one of fact for the jury. *Shorter v. Drury*, *supra*; 6 Wash. Prac., *WPI* 13.02, at 141 (3d ed. 1989).

Here, the jury was properly instructed regarding the defense of implied assumption of a specific risk of harm and, by special interrogatory, concluded that Mr. Tincani assumed the risk. There is evidence to sustain the jury's determination.

■ Whether implied assumption of risk is a complete bar to recovery or a damage reducing factor was discussed in *Kirk*, at 454-55:

> Assumption of the risk may act to limit recovery but only to the extent the plaintiff's damages resulted from the specific risks known to the plaintiff and voluntarily encountered. To the extent a plaintiff's injuries resulted from other risks, created by the defendant, the defendant remains liable for that portion.

Mr. Tincani's assumption of the risk was not a complete bar to his recovery against the Zoo.

COMMENT ON THE EVIDENCE

The Zoo contends the court's use of the word "only" in instruction 12 was a comment on the evidence. That instruction advised the jury that "[a] school district is only required to anticipate reasonably foreseeable dangers and to take precautions protecting the children in its custody from such dangers." The Zoo argues the instruction was a comment on the evidence because it conveyed the judge's personal attitude toward the merits of the case.

Article 4, section 16 of our constitution provides: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." The purpose of this provision is to prevent the jury from being influenced by knowledge conveyed to it by the trial judge. *State v. Swan*, 114 Wn.2d 613, 657, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046, 112 L. Ed. 2d 772, 111 S. Ct. 752 (1991).

■ An impermissible comment on the evidence is one which conveys to the jury a judge's personal attitude toward the merits of the case or allows the jury to infer from what the judge said or did not say that the judge personally believed particular testimony. *Hamilton v. Department of Labor & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988); *Egede-Nissen v. Crystal Mt., Inc.*, 93 Wn.2d 127, 139, 606 P.2d 1214 (1980).

An instruction which does no more than accurately state the law pertaining to an issue in the case does not constitute an impermissible comment on the evidence by a trial judge under article 4, section 16. *Seattle v. Smiley*, 41 Wn. App. 189, 192, 702 P.2d 1206, *review denied*, 104 Wn.2d 1017 (1985).

■ Here, the instruction does not convey the judge's attitude toward the merits of the case to the jury or belittle the duty the school district owed. *Carabba v. Anacortes Sch. Dist. 103*, 72 Wn.2d 939, 435 P.2d 936 (1967). The specific wording of jury instructions is a matter within the trial court's discretion. *Douglas v. Freeman*, 117 Wn.2d 242, 256, 814 P.2d 1160 (1991).

Moreover, the court instructed the jury that the judge was not permitted to comment on the evidence and to disregard any such comments made.

DENIAL OF MISTRIAL

The Zoo contends the court erred in not granting a mistrial after David Williams, a private investigator hired by Mr. Tincani to investigate the accident site, stated two times in his testimony that he met with the Zoo's insurance agent. The court granted the Zoo's motion in limine to exclude any reference to the issue of whether the Zoo had liability insurance.

■ Whether a mistrial should be ordered because improper evidence is inadvertently mentioned is a determination within the sound discretion of the trial judge. *Rich v.*

*Starczewski,* 29 Wn. App. 244, 247, 628 P.2d 831, *review denied,* 96 Wn.2d 1002 (1981). The trial judge's presence in the courtroom enables him to best determine the effect, if any, of such statements on the jury and if the statements were sufficient to deny the appellant a fair trial. *Church v. West,* 75 Wn.2d 502, 506, 452 P.2d 265 (1969).

■ In *Lyster v. Metzger,* 68 Wn.2d 216, 412 P.2d 340 (1966), the court held that when the mention of insurance is inadvertent and neither the witness nor the attorney "willfully or collusively" injected such fact into the proceedings, a mistrial will not be granted. *Lyster,* at 224 (quoting *Williams v. Hofer,* 30 Wn.2d 253, 265, 191 P.2d 306 (1948)).

Here, even though the Zoo had moved in limine to limit references to insurance, in light of the inadvertent nature of the comment, the court did not abuse its discretion in denying the motion for a mistrial.

We affirm.

THOMPSON, A.C.J., and MUNSON, J., concur.

Review granted at 120 Wn.2d 1018 (1993).