# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KARON STEEPY, a single person, | ) | No. 72403-7-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WALKIN' THE DOGS & PET | ) | |
| SERVICES, INC., d/b/a BOW WOW | ) | |
| FUN TOWNE, a Washington | ) | |
| corporation; and JOHN DOE | ) | |
| COMPANY, an entity, | ) | |
| | ) | |
| Respondents. | ) | FILED: August 24, 2015 |

TRICKEY, J. — Karon Steepy sued Walkin' The Dogs & Pet Services, Inc. (d/b/a Bow Wow Fun Towne) for negligence after she slipped and injured herself while passing through a temporarily installed fence. Steepy failed to demonstrate a genuine factual issue as to whether the fence posed an unreasonable risk to business invitees. Accordingly, we affirm the trial court's dismissal of her claim on summary judgment.

## FACTS

On August 21, 2010, Walkin' The Dogs & Pet Services, Inc. (WTD) held an annual fundraiser to raise money for an animal shelter. As part of the fundraiser, WTD offered to wash pet owners' dogs at no charge.

Inside of the premises was a sitting area adjacent to the room where dogs were washed. The two areas were separated by a half-wall. At the end of the half-wall was an opening through which people could walk to and from the dog wash and sitting areas. To prevent dogs from leaving the dog wash area, Mary Mark, the owner of WTD, installed a temporary fence at the opening. The fence was installed for the fundraiser only. WTD had only installed it four times before.

The fencing equipment used was an exercise pen made of metal wire. The fence had a double latch gate made of the same material. Below the gate was a six inch panel or threshold that was stationary and did not swing open.

Steepy was at the fundraiser that day. According to Steepy, after she stepped through the gate with her right foot, the gate "prematurely"[1] closed on her left foot. She alleged that her left foot got trapped between the fence's threshold and the gate. Steepy fell to the ground as a result.

Steepy sued WTD for injuries she sustained as a result of the allegedly dangerous placement of the fence.

WTD filed a motion for summary judgment. The trial court granted WTD's motion. The court determined in part that Steepy failed to identify evidence tending to show that the fence posed an unreasonable risk.

Steepy appeals.

ANALYSIS

We review the grant of summary judgment de novo, undertaking the same inquiry as the trial court. Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is appropriate only if the supporting materials, viewed in the light most favorable to the nonmoving party, demonstrate "'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Hartley v. State, 103 Wn.2d 768, 774, 698 P.2d 77 (1985) (quoting CR 56(c)). "'[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" Young v. Key Pharm., Inc.,

---

[1] Clerk's Papers (CP) at 27, 68.

112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

To prevail on a negligence claim, Steepy must prove duty, breach, causation, and injury. Tincani v. Inland Empire Zoological Soc., 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). Here, the parties contest the question of duty.

In a premises liability action, the scope of the duty of care depends on the entrant's common law status as an invitee, licensee, or trespasser. Tincani, 124 Wn.2d at 128. The parties do not dispute Steepy's status as a business invitee.

A landowner generally owes business invitees a duty to exercise "[r]easonable care" and "inspect for dangerous conditions, 'followed by such repair, safeguards, or warning as may be reasonably necessary for [the invitee's] protection under the circumstances.'" Tincani, 124 Wn.2d at 139 (quoting Restatement (Second) of Torts § 343 cmt. b (1965)). A property owner is liable to invitees for injury-causing conditions if the landowner:

> "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger."

Tincani, 124 Wn.2d at 138 (quoting Restatement § 343).

Here, Steepy failed to demonstrate a genuine issue of material fact that the fence posed an unreasonable risk of harm. The basis of Steepy's claim in the trial court was that the gate "prematurely" closed on her foot as she passed through it. But none of the evidence she submitted supported this allegation. For example, she introduced no evidence to show that the gate was equipped with a self-closing mechanism that would

automatically close once opened. Indeed, the evidence showed the contrary—that the gate required manual operation to open and close it.

Steepy also asserted that the dimension of the fence's threshold was too high, contrary to the International Building Code (IBC), causing her foot to become trapped between the threshold and the closing gate. Her claim rested entirely on the declaration submitted by expert Dr. Gary Sloan, a forensic human factors specialist. In it, Dr. Sloan opined the following:

> 22.  In my opinion, the step-thru door implicated in Karon Steepy's fall failed to meet applicable standards specified in the International Building Code (2009). More specifically:
>> a.    **1008.1.1 Size of doors.** The minimum width of each door opening shall be sufficient for the occupant load thereof and shall provide a clear width of 32 inches (813 mm).
>> The step-thru door at Bow Wow Fun Towne was 24-inches wide.
>> b.    **1008.1.7 Thresholds.** Thresholds at doorways shall not exceed 3/4 inch (19.1 mm) in height for sliding doors serving dwelling units or 1/2 inch (12.7 mm) for other doors.
>> The bottom assembly of the step-thru door, which constituted its threshold, was 6 inches in height.
>
> 23.  In my opinion as a human factors specialist, when Karon Steepy attempted to pass to the other side of the step-thru door at Bow Woe [sic] Fun Towne on August 21, 2010, her left foot became caught in a pinch point. Whether or not her left foot made contact with the bottom assembly before her ankle was caught in a pinch point is, in my opinion, less important than the fact that the *dimensions and possible instability* of the step-thru door *posed a serious risk to pedestrian safety.*[2]

Dr. Sloan's declaration provides no evidentiary support for Steepy's arguments. The declaration merely asserts that "dimensions and possible instability of the step-thru door posed a serious risk to pedestrian safety."[3] He does not explain with specificity why the fence's dimensions posed the alleged risk. Nor does his declaration show how

---

[2] CP at 117 (emphasis added).
[3] CP at 117.

4

the alleged risk caused the gate to prematurely close on Steepy's foot, causing her foot to become trapped in the fence. In other words, Dr. Sloan's explanation of the risk did not relate to Steepy's explanation of how the injury occurred. Accordingly, Steepy failed to provide evidence tending to establish that the fence presented an unreasonable risk. Steepy's claim was properly dismissed.

Affirmed.

Trickey, J

WE CONCUR: