IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DARLENE TATLEY, a married woman, | ) | |
| | ) | No. 39040-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GURMAIL S. GILL, and PARDEEP | ) | UNPUBLISHED OPINION |
| GILL, husband and wife, GILL | ) | |
| HARMON, LLC, a Washington Limited | ) | |
| Liability Company DBA SUPER STOP, | ) | |
| GILL BROTHERS, LLC, a Washington | ) | |
| limited Liability Company DBA | ) | |
| LAKESHORE INN, and JANE and JOHN | ) | |
| DOES 1-5, | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, J.P.T.* — Darlene Tatley appeals the dismissal of her personal injury

action seeking damages for injuries sustained when she tripped over a rope defendants

had strung across an entrance to their fenced parking lot. The trial court granted

summary judgment, ruling that the affirmative defense of implied primary assumption of

the risk was established as a matter of law.

---

* Judge Laurel H. Siddoway was a member of the Court of Appeals at the time argument was held on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

Material disputes of fact exist as to Ms. Tatley's subjective understanding of the risk and the foreseeability of her attempt to step over the rope. We reverse the order of dismissal and remand for further proceedings.

FACTS AND PROCEDURAL BACKGROUND

On July 20, 2019, the city of Pateros was celebrating its annual Apple Pie Jamboree. Darlene Tatley, an 83-year-old Pateros resident, attended the festivities with her daughter's family, who was visiting from Woodinville. At day's end, the family had pizza at the Sweet River Bakery, anticipating the fireworks to follow later in the evening. Ms. Tatley's daughter, Sherie Overcash, decided to return to the Tatley home instead, and mentioned that she would be stopping for gas first.

Moments after Ms. Overcash left the bakery, Ms. Tatley decided she would like to go home, too. She figured she could catch up with her daughter for a ride, since the gas station was just around the corner. Leaving out the rear entrance to the bakery, Ms. Tatley walked through the parking lot for the Lakeshore Inn. The inn is located next to the gas station. The Lakeshore Inn parking lot is surrounded by low cyclone fencing. The lot can be entered through a break in the fencing behind Sweet River Bakery. From there, after crossing the lot, one can exit through a "person-sized" break in the fencing or a "driveway-sized" break, for cars. The driveway-sized break in the fencing is adjacent to a crosswalk that leads to the Lakeshore Inn and gas station.

An aerial photograph that was offered in evidence at the summary judgment hearing is helpful:



Ex. D-1. The Lakeshore Inn, its parking lot, and the gas station are all owned by Gurmail and Pardeep Gill.

According to Ms. Tatley, the parking lot was full of cars that evening. As she walked toward the driveway and crosswalk, Ms. Tatley noticed that a rope was strung across the driveway. On reaching the rope, she stepped over it with her left leg without trouble, but in bringing her right leg along, the toe of her tennis shoe caught the rope and she fell forward, landing on her left hip. The fall left her in significant pain, and unable to stand up. Two good Samaritans saw her fall and stopped to help. At Ms. Tatley's

request, one located Ms. Overcash at the gas station and told her of her mother's fall; Ms. Overcash drove across the street to where her mother had fallen, and one of the Samaritans lifted Ms. Tatley into Ms. Overcash's truck. Ms. Overcash drove Ms. Tatley home, where she slept in her clothes because her hip pain was too intense to undress.

The next morning, Ms. Tatley's son-in-law drove her to the Overlake Medical Center in Bellevue, where she learned she had broken her left hip. She underwent hip surgery and was discharged three days later. After being discharged, she spent a month recuperating with her daughter's family in Woodinville.

Ms. Tatley brought the action below two years later, asserting that she was a business invitee of the parking lot, and the Gills had negligently created an unreasonably dangerous condition by roping off the driveway with no kind of warning sign or supervision.

Discovery was conducted, after which the Gills moved for summary judgment dismissal of the complaint. For purposes of the summary judgment motion only, they conceded that Ms. Tatley was an invitee, but argued that dismissal was still warranted based on their affirmative defense of implied primary assumption of risk. Their memorandum in support of the motion largely relied on their deposition of Ms. Tatley, and characterized the undisputed material facts as follows:

> [Ms. Tatley] crossed the parking lot and encountered a rope barrier across a driveway into the lot which she decided to step over. The rope was connected on both sides to obstruct entry, and Ms. Tatley thought she could

go over it. She believes the rope was yellow, elevated to just below her waist. There were public sidewalks around the parking lot and from the bakery that would not have necessitated traversing the parking lot, or the roped driveway; there was also a nearby gap in the fence surrounding the parking lot where a pedestrian walkway existed. She chose to go "straight across" the parking lot and try to go over the rope instead of taking other routes that were not roped off.

When Ms. Tatley stepped over the rope with her left leg, her right "trailing" leg caught on the rope and caused her to fall.

It is undisputed that Ms. Tatley saw the rope across the driveway, knew it was there, chose to go over the rope instead of other exits out of the parking lot, or to utilize the public sidewalk around the parking lot. She admits that she saw it but simply thought she could clear it stepping over it. In fact, Ms. Tatley remembers having seen the rope there on previous occasions. In "hindsight," she wishes she had not gone that way.

Clerk's Papers (CP) at 16 (record citations omitted).

Elsewhere in the deposition excerpts submitted by the Gills, Ms. Tatley testified that she observed the rope before reaching it, "but I just assumed I wouldn't have any problem going over that," and "I felt I could clear it." CP at 36, 38. Asked, "Did you appreciate there was a risk by being a rope?" she answered,

Yeah, no, I saw it and I just thought I could clear it. You know, I just thought I was fine until my second leg, but, no, I couldn't clear it. But I thought that isn't that bad, it's just a little rope there.

CP at 39.

Ms. Tatley's response to the summary judgment motion included a request for a continuance of the motion under CR 56(f), to allow time for a human factors expert to complete a report. For a variety of other reasons, however, a hearing on the summary

judgment motion was continued multiple times, until June 23, 2022. At that point, Ms.

Tatley had ceased renoting her CR 56(f) motion for hearing. She never filed an expert

report.

By the June 23rd summary judgment hearing, Ms. Tatley had amended her

response and filed a total of five declarations, including one of her own. In her

declaration, Ms. Tatley testified:

> I know now there is a smaller "exit," but I don't remember seeing it
> because there were lots of cars parked all around. Either way, that little exit
> did not have a crosswalk. I saw the cross walk [sic] and walked straight to
> it.
>
> . . . The only way to the access the cross walk [sic] was to go over
> the rope or under the rope. Like I said, I know now that I could have
> walked about 100 feet back through the parking lot, through the little gate
> hidden between cars, then down the side walk [sic] to right where I was,
> and cross the street. However, I did not know that at the time . . . .
>
> . . . When I approached the roped off area, I noticed that the rope
> was yellow in color, and it came up to about my waist at the ends (I am
> 5' 3"). It was lower in the middle where I crossed, but I'm not sure how
> high. Maybe knee high, but I don't recall.

CP at 79-80. Ms. Tatley contended there were material disputes of fact over the height of

the rope and whether the Gills should have anticipated that despite an apparent risk,

pedestrians would continue stepping over, or attempting to step over the rope.

When the summary judgment motion was heard, a first order of business was the

Gills' motion to strike all or part of the declarations submitted by Ms. Tatley. Her

declarations had included such matters as the witnesses' assumptions about the purpose

6

of the rope and whether the Gills had been irresponsible in roping the driveway entrance.

Much of the motion to strike was granted. The only granting of the motion that is challenged by Ms. Tatley on appeal is the court's ruling striking part of the declaration of her daughter, Ms. Overcash. In that connection, the court orally ruled:

> [L]ooking at Sheri[e] Overcash's right now. Paragraph 6, I would strike the sentence—or I guess the portion of the sentence written. She says, "It appeared that the rope was just there to keep cars out." . . . [W]hat she understood the purpose of the rope to be [is] not relevant. I guess she can testify as to the fact that there was [sic] no signs telling pedestrians not to enter. The fact that she did see the rope after the fact, I guess, is relevant. It is something that she could testify to at trial. She testifies to the height of it.
>
> And then Paragraph 7, her thoughts about [the rope] being ridiculous, what they should have done instead, [is] not relevant. So striking that. The rest of it is not . . . sought to be stricken.

Rep. of Proc. (RP) at 12.

After ruling on the motion to strike, the court inquired about Ms. Tatley's earlier request to continue the summary judgment hearing and received the following response:

> THE COURT: . . .[J]ust so I'm clear, because I know that it was raised once upon a time, there was a motion to continue. Is that still—
> [PLAINTIFF'S COUNSEL]: No.
> THE COURT: Not being sought.
> [PLAINTIFF'S COUNSEL]: No, thank you.
> THE COURT: Okay.

RP at 14.

The trial court granted summary judgment. Ms. Tatley appeals.

ANALYSIS

Ms. Tatley makes three assignments of error, two of which we can dispose of readily. Error is assigned to the trial court's denial of Ms. Tatley's CR 56(f) motion, but after she requested a continuance of the hearing to May 1, it was continued to the even later June 23 date, for other reasons.[1] The CR 56(f) motion was not renoted for the June 23 hearing and plaintiff's counsel acknowledged at the hearing that the relief was no longer being sought.

Ms. Tatley also objects to the court striking the second sentence of paragraph 6 of her daughter's declaration, which states that the rope, which Ms. Overcash observed on the evening Ms. Tatley fell, "was not waist high, more like right at my knees." CP at 85. It is apparent from the court's oral ruling that it intended to strike only the third sentence of that paragraph, which speculated about the rope's purpose. The Gills' counsel acknowledges that the court's later written order misstates its ruling at the hearing. The Gills argued and the trial court was persuaded that the height of the rope was irrelevant; with that, we disagree. In our de novo review of the summary judgment decision, which we turn to next, we will treat the sentence addressing the rope's height as not having been struck.

---

[1] It was continued first when Ms. Tatley filed an affidavit of prejudice. It was continued a second and third time, eventually taking place on June 23. The Gills' counsel represents that the second and third continuances were due to plaintiff's counsel's having a conflict, and later, illness. Ms. Tatley does not dispute these representations.

I.      ELEMENTS OF THE AFFIRMATIVE DEFENSE AND STANDARD OF REVIEW

Washington courts recognize *Restatement (Second) of Torts* § 343A (AM. LAW

INST. 1965) as the appropriate standard for duties to invitees for known or obvious

dangers.  *Tincani v. Inland Empire Zoological Soc.*, 124 Wn.2d 121, 139, 875 P.2d 621

(1994).  As previously noted, the Gills conceded Ms. Tatley's status as an invitee for

purposes of their summary judgment motion.

Section 343A(1) "contains two distinct clauses: '[1] A possessor of land is not

liable to . . . invitees for physical harm caused to them by any activity or condition on the

land whose danger is known or obvious to [an invitee], [2] unless the possessor should

anticipate the harm despite such knowledge or obviousness.'"  *Little v. Rosauers*

*Supermarkets, Inc.*, 24 Wn. App. 2d 898, 903, 521 P.3d 298 (2022) (alterations in

original).  The defense under section 343A(1)'s first clause focuses on the knowledge of

the plaintiff.  *Id.* (citing RESTATEMENT § 496C).  To establish the defense, a land

possessor "must prove 'the plaintiff (1) had full subjective understanding (2) of the

presence and nature of the specific risk, and (3) voluntarily chose to encounter the risk.'"

*Id.* (quoting *Kirk v. Wash. State Univ.*, 109 Wn.2d 448, 453, 746 P.2d 285 (1987) (citing

RESTATEMENT § 496C(1)).  The basis of this type of assumption of the risk, like express

assumption of the risk, is "the plaintiff's consent to the negation of a duty by the

defendant with regard to those risks assumed by the plaintiff."  *Kirk*, 109 Wn.2d at 453-

54.  If the plaintiff's assumption of the risk is *implied primary*, rather than *implied*

9

*unreasonable*, it means the plaintiff has "assume[d] the dangers that are *inherent in* and

*necessary to* the particular . . . activity," and is a complete bar to recovery. *Tincani*, 124

Wn.2d at 143. In some cases—an example being *Tincani*—the court can determine as a

matter of law that the facts can support only implied *unreasonable* assumption, not

implied primary assumption, in which case the rules of contributory fault apply. *Id.* at

143.[2]

As set forth in section 343A(1)'s second clause, the first clause does not apply in

circumstances where a land possessor can and should anticipate harm despite the

obviousness of the risk. *Little*, 24 Wn. App. 2d at 903. Comments to the section observe

that a reason to expect harm may arise "where the possessor has reason to expect that the

invitee will proceed to encounter the known or obvious danger because to a reasonable

man in his position the advantages of doing so would outweigh the apparent risk."

RESTATEMENT § 343A cmt. f.

When the issue on appeal is the entry of summary judgment, our review is de

novo; we engage in the same inquiry as the trial court. *Grundy v. Thurston County*, 155

---

[2] Implied *unreasonable* assumption of the risk focuses not so much upon the duty and negligence of the defendant as upon the further issue of the objective unreasonableness of the plaintiff's conduct in assuming the risk. *Kirk*, 109 Wn.2d at 454. Some of the trial court's statements in announcing its decision appeared to have objective unreasonableness in mind. *See* RP at 18 ("[I]f the Court were to say, Well, how would she know that is to be a risk—that could be a risk? The answer to that question is it's pure common sense. Everyone knows that if you go over—to step over a rope, particularly if you're an elderly lady like she was, well into her 80s, that there is a risk.").

Wn.2d 1, 6, 117 P.3d 1089 (2005). Summary judgment should be granted where "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law." CR 56(c). We view all

facts and reasonable inferences in the light most favorable to the nonmoving party.

*Watness v. City of Seattle*, 16 Wn. App. 2d 297, 305, 481 P.3d 570 (2021). Summary

judgment is proper only if reasonable persons could reach but one conclusion from all the

evidence. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d

805 (2005).

II.    SUMMARY JUDGMENT WAS INAPPROPRIATE ON THIS RECORD

Ms. Tatley argues that genuine issues of material fact exist as to (1) the height of

the rope barrier, (2) the availability of an alternate route, (3) Ms. Tatley's subjective

knowledge of the risks in crossing the rope barrier, and (4) the Gills' anticipation that

pedestrians and patrons would attempt to cross the barrier.

The evidence offered by the Gills in moving for summary judgment established

that Ms. Tatley had a full subjective understanding of the *obstacle in her path*, but did not

establish that she had a full subjective understanding of the *risk*. She testified that at the

time of her fall, it was still light outside; it was a clear day; she saw the rope before she

reached it; she could see how high it was (although she had difficulty placing an estimate

on its height); she was not carrying anything; and she did not claim to have been

11

distracted. But she repeatedly testified that she was not concerned about having to step over the rope because she assumed she could clear it. This does not establish the full subjective understanding of the presence and nature of the risk that can operate to negate the land possessor's duty. Our Supreme Court recently emphasized that for "a landowner to evade liability for a dangerous condition on their land pursuant to § 343A, 'the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and *the probability and gravity of the threatened harm must be appreciated.*" *Wright v. 3M Co.*, No. 100768-0, 2023 WL 4939437, at *5 (Wash. Aug. 3, 2023) (quoting RESTATEMENT § 343A cmt. b)). Perhaps the Gills will be able to present evidence at trial that will cast doubt on Ms. Tatley's professed belief that the rope did not present a risk, but at a minimum, it is a disputed issue of fact that precludes summary judgment.

A genuine issue of fact is also presented as to whether the Gills should have anticipated that members of the public would step over or attempt to step over the rope to move between the sidewalk and the parking lot. Ms. Tatley testified when deposed that she had seen the rope before, and had previously taken a path through the parking lot's driveway entrance "[l]ots of times." CP at 35. Viewing the evidence in the light most favorable to Ms. Tatley, a reasonable juror could infer from her testimony and the photographs in evidence that the parking lot could be viewed by the public as a convenient shortcut. The Gills did not offer evidence that would rebut that inference.

12

No. 39040-3-III
*Tatley v. Gill*

They submitted a declaration of Gurmail Gill attesting to the Gills' ownership, and which asserted that the parking lot they owned was "for the exclusive use of hotel guests," CP at 23, but even this supports an inference that hotel guests, at a minimum, would foreseeably step over the rope (or attempt to) in traveling between their hotel room and car. Given these material disputes of fact, summary judgment was improper.

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.P.T.

WE CONCUR:


_____
Fearing, C.J.


_____
Pennell, J.

13