# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ALISA GRIMES, individually, | 59033-6-II |
| Appellant, | |
| v. | |
| JERAMY BRADY and HEATHER BRADY, husband and wife, and their marital community; and GROUP/7, INC. a Washington state for profit corporation. | UNPUBLISHED OPINION |
| Respondents. | |

PRICE, J. — Alisa Grimes was badly injured by fire when she accidently fell into an outdoor firepit. At the time of the incident, Grimes was a guest of her friends who were renting the home in Steilacoom.

Grimes filed a complaint against the property owners, Jeramy and Heather Brady, and Group/7 Inc., the Bradys' property management company, for negligence. The superior court dismissed the claims against the Bradys and Group 7 on summary judgment, ruling (1) that the Bradys did not owe a duty to protect against a known or obvious hazard, and (2) that the Bradys' tenants created the hazard.

Grimes appeals. She mainly argues that even if the hazard was known and obvious, the Bradys should have anticipated the harm.

We affirm.

FACTS

I. BACKGROUND

In 2012, the Bradys purchased a home, the backyard of which had a downward slope toward a waterfront. They eventually installed a firepit in the backyard located on the slope. In 2015, not long after the firepit was installed, the Bradys were required to move due to Jeramy's military service. But instead of selling the home, the Bradys decided to rent it.

To manage the home as a rental, the Bradys used the services of Rob Arroyo, who worked at a company that would eventually become Group 7. Prior to renting the property, Arroyo and the Bradys did a "walk-through" of the property. Clerk's Papers (CP) at 78. Arroyo testified that he told the Bradys about potential hazards, including the firepit in the backyard. The Bradys decided to have Arroyo instruct the tenants that the firepit was not to be used. At that time, the firepit was overgrown with grass and, according to Arroyo, "basically" not functional. CP at 317.

Several years later, in 2018, Arroyo became aware that the tenants were having fires in the firepit against his express instructions. Thereafter, Arroyo repeatedly instructed the tenants not to have fires in the firepit. Nevertheless, the tenants apparently continued to have fires there.

In August 2019, the Bradys agreed with Arroyo (and Group 7) to begin the process of evicting the tenants because of lease violations and other issues, including the continued use of the firepit. As a result, Group 7 sent a "comply or vacate" notice to the tenants on August 19. CP at 108.

II. THE INCIDENT

On September 5, 2019, at the invitation of one of the tenants, Grimes attended a gathering at the property. A fire, described as "bigger than a typical campfire," was burning in the firepit.

CP at 247. Due to the slope down to the firepit (Grimes said she was "afraid to walk down the hill"), Grimes walked down a longer and "more gradual" way to the fire because she wanted to keep an eye on children who were nearby. CP at 254. When Grimes arrived at the fire, she sat on an empty cooler. At some point, Grimes stood up to get some food. But as she stood, the empty cooler disrupted her balance, causing her to trip on a nearby sandal and fall into the fire. Grimes' resulting injuries were serious, and she was airlifted to a hospital.

The day of the incident was not the first time that Grimes had sat near the fire at the Bradys' property. Grimes had visited the home and sat by the firepit (with a fire burning) a few weeks before the incident. Grimes explained that before the incident, the firepit gave her anxiety because she felt "it might be a little unsafe." CP at 264.

The day after the incident, a neighbor emailed Arroyo to notify Group 7. The email suggested that the neighbors had previously told Arroyo that the fires had occurred almost nightly throughout the summer and that the neighborhood was concerned. The email also suggested that care had not been taken around the fires because someone had been seen pouring fuel directly into the fire.

At some point after the incident, the Bradys filled in the firepit with gravel. The Bradys would later claim that when they filled in the firepit, they had noticed that the firepit was no longer the same size as when they originally constructed it—it had been expanded.

III. GRIMES' COMPLAINT AND SUMMARY JUDGMENT

Grimes filed a complaint against the Bradys and Group 7 for negligence based on premises liability. The complaint alleged that the Bradys "employed" Group 7 to manage their property and that Group 7 was an "employee/agent" of the Bradys. CP at 2. The complaint collectively alleged

3

that the defendants owed several duties to Grimes as an invitee on the Bradys' property. Grimes' complaint did not assert any independent claim solely against Group 7.

The Bradys moved for summary judgment. They argued that they did not owe any duty to Grimes because using the firepit was a known or obvious hazard and a tenant, not the Bradys, had created the condition. Group 7 filed a "Joinder in Defendants Bradys' Motion for Summary Judgment." The pleading stated that Group 7 joined in the position that the Bradys did not owe a duty to Grimes, but it did not expressly request that claims against Group 7 be dismissed.

Initially, the superior court partially granted and partially denied the motion for summary judgment. The superior court granted summary judgment on the issue of whether the firepit was a known or obvious hazard, but it denied summary judgment on whether the Bradys' duty to Grimes was breached. The superior court did not address whether the firepit was a tenant-created condition.

The Bradys moved for reconsideration. The Bradys reiterated their argument that they did not owe a duty to Grimes and that the hazard was a tenant-created condition. As part of the tenant-created condition theory, the Bradys argued that they owed no duty to Grimes because the tenants created the danger of the fire. Once again, Group 7 filed a joinder in the Bradys' motion, but this time, Group 7 moved to have the claims against it dismissed. After a hearing, the superior court granted the Bradys' motion for reconsideration.

Grimes appeals.

ANALYSIS

Grimes challenges the dismissal of her suit with three main arguments. First, Grimes argues that the Bradys owed a duty to protect her against the firepit, a known and obvious hazard,

because the Bradys should have anticipated the harm. Second, Grimes argues that the Bradys are liable, not the tenants, because the Bradys created the hazard prior to renting the property. And third, Grimes argues that Group 7 is not entitled to summary judgment because when Group 7 merely "joined" the Bradys' summary judgment, it did not expressly move for dismissal of claims directly against it. Petitioner's Opening Br. at 1. We disagree.

## I. STANDARD OF REVIEW

We review the superior court's summary judgment order de novo. *Blue Ribbon Farms Prop. Owners' Ass'n. v. Mason*, 31 Wn. App. 2d 1, 14, 547 P.3d 927 (2024). We engage in the same inquiry as the superior court. *Id.* at 15. Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue controlling the outcome of the litigation. *Sartin v. Estate of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020), *review denied*, 196 Wn.2d 1046 (2021). When determining whether to grant summary judgment, we view all facts and inferences in the light most favorable to the nonmoving party. *Meyers*, 197 Wn.2d at 287. We may affirm the superior court's order granting summary judgment on any basis supported by the record. *Mason*, 31 Wn. App. 2d at 15.

## II. PROPERTY OWNER'S DUTY OF CARE TO AN INVITEE

To establish negligence a plaintiff must prove four basic elements: "(1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Chaudhry v. Day*, 31 Wn. App. 2d 225, 230, 548 P.3d 279 (2024). In general, the existence of a legal duty is a

question of law. *Id.* However, where the existence of a duty depends on proof of certain facts, which are disputed, summary judgment is inappropriate. *Id.*

The scope of the duty of care owed by the property owner is determined by the common law classification of the person entering the property. *Musci v. Graoch Assocs. Ltd. P'ship No. 12*, 144 Wn.2d 847, 854-55, 31 P.3d 684 (2001). A residential tenant is an invitee. *Id.* at 855. And a tenant's guest is also an invitee. *Sjogren v. Props. of Pac. Nw., LLC*, 118 Wn. App. 144, 148, 75 P.3d 592 (2003).

A property owner owes an invitee a duty of reasonable care to make the land safe for their entry. *Tincani v. Inland Empire Zoological Soc'y.*, 124 Wn.2d 121, 138-39, 875 P.2d 621 (1994) (adopting certain standards in the Restatement (Second) of Torts § 343, 343A (Am. Law Inst. 1965)). "Reasonable care requires the landowner to inspect for dangerous conditions, 'followed by such repair, safeguards, or warning as may be reasonably necessary for [the invitee's] protection under the circumstances.' "[1] *Id.* at 139 (alteration in original) (quoting Restatement (Second) of Torts § 343 cmt. b).

---

[1] Restatement (Second) of Torts § 343 reads:

> A possessor of land is subject to liability for physical harm caused to [their] invitees by a condition on the land if, but only if, [the possessor]
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

However, a property owner's duty of care to invitees is not unlimited. *Id.* In general, a property owner is not liable for an activity or condition on the land when the activity or condition's danger is known or obvious to the invitee. *Id.* But in limited circumstances, a property owner may have a duty to protect invitees even from known or obvious dangers. *Id.* This occurs when a property owner " 'should anticipate the harm despite such knowledge or obviousness.' " *Id.* (quoting Restatement (Second) of Torts § 343A(1)).

The Restatement further elaborates on the meaning of the terms "known or obvious." Restatement (Second) of Torts § 343A, cmt. b. "Known" includes not only "knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." *Id.* "Thus the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated." *Id.* " 'Obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id.*

*Tincani* also identified three circumstances from the Restatement when a property owner " 'should anticipate the harm despite such knowledge or obviousness.' " 124 Wn.2d at 139 (quoting Restatement (Second) of Torts § 343A(1)). They include when the property owner has reason to expect the invitee (1) would be distracted, (2) would forget about the known or obvious danger, or (3) would conclude that the advantages from encountering the danger outweighed the

7

risk.[2]  *Id.* at 139-40.  *Tincani* suggests that these circumstances trigger the property owner's responsibility to warn of, or make safe, a known or obvious danger, but that they are not necessarily the only circumstances where such a duty might arise.  *Id.* at 140 n.6 ("The Restatement . . . offered these three circumstances as examples and we repeat them as such.  They describe *some of the instances* in which a landowner has a duty to warn of known or obvious dangers." (emphasis added)).

III.  THE BRADYS OWED NO DUTY TO GRIMES FOR THIS CONDITION

Grimes' main argument is that if the facts are construed in a light most favorable to her, it is at least a jury question as to whether the defendants owed her a duty of care to protect her from the danger related to the firepit.[3]  Grimes contends that there is "significant evidence" that the Bradys and Group 7 should have anticipated the harm to Grimes, notwithstanding the danger being known and obvious.  Petitioner's Opening Br. at 17.  Specifically, Grimes points to the fact that Arroyo identified the firepit as a hazard but rather than removing the firepit, the Bradys only instructed the tenants not to use it.  Grimes also cites to Arroyo's knowledge that the firepit was being used by the tenants and that the neighbors had concerns.

---

[2] Comment f of § 343A of the Restatement states,

> [R]eason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be *distracted,* so that [they] will not discover what is obvious, or *will forget* what [they have] discovered, or fail to protect . . . against it.  Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable [person] in [that] position the *advantages* of doing so would *outweigh the apparent risk.*

(emphasis added).

[3] The parties agree that Grimes was an invitee.

The Bradys respond that having fires in the firepit was a known or obvious hazard from which they had no duty to protect Grimes. The Bradys contend that, according to *Tincani*, Grimes needed to show the presence of one of the three circumstances set forth above and Grimes failed to do so. Specifically, the Bradys contend that Grimes has not shown that the Bradys should have anticipated that she would have been distracted, forgetful, or that she would have concluded that the advantages of encountering fires in the firepit outweighed the risk.

We agree the Bradys did not owe a duty to Grimes with respect to the use of the firepit.

Here, Grimes did not dispute that having fires in the firepit represented a known or obvious hazard in her opening brief.[4] Consequently, the defendants did not owe a duty to Grimes *unless* the Bradys should have anticipated the harm despite such knowledge or obviousness. *See Tincani*, 124 Wn.2d at 139.

Answering this question requires analyzing the facts (construed in a light most favorable to Grimes) in the context of the three circumstances outlined in *Tincani*. *Id.* at 139-40. As noted above, *Tincani* provided that a property owner has reason to anticipate the harm, notwithstanding

---

[4] In her opening brief, Grimes appears to concede the known and obvious danger of the use of the firepit. Petitioner's Opening Br. at 17 ("Defendants should have anticipated the harm despite the firepit being open and obvious . . . ."). For the first time in Grimes' reply brief, Grimes appears to contend that fires in the firepit may not have been a "known" danger within the meaning of the Restatement because there was no evidence that she appreciated the gravity or probability of the harm caused by "backyard recreational fires." Reply Br. of Appellant at 11. We need not consider her argument to the contrary first made in her reply brief. RAP 10.3(c); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (explaining that we need not address arguments first raised in a reply brief). But even if we considered this new argument, reasonable minds could not differ that the hazardous nature of fires in the firepit would have been "obvious"—that is, "apparent to and would be recognized by a reasonable [person], in the position of the [invitee], exercising ordinary perception, intelligence, and judgment." *See* Restatement (Second) of Torts § 343A, cmt. b.

the known or obvious danger, when the property owner has reason to expect the invitee (1) would be distracted, (2) would forget about the known or obvious danger, or (3) would conclude that the advantages from encountering the danger outweighed the risk. *Id.*

Here, the facts do not fit within any of these three circumstances. First, there is no evidence that shows the Bradys should have expected that Grimes' attention would be distracted so that she would not appreciate the danger of a fire in the firepit. *See Id.* at 139. Assuming there was a danger created by a large fire burning in the firepit, Grimes was sitting nearby *because* it was a fire, which is the only use that could be reasonably anticipated by the property owner. Distraction would seem to be highly unlikely when the sole purpose of being near the danger (the fire) is the fire itself. Even construing the facts in a light most favorable to Grimes, there is no plausible argument that the Bradys should have anticipated distraction in this context.

Second, there is no reasonable argument that the Bradys should have anticipated that invitees, like Grimes, would be forgetful about the danger. Again, the danger would be from a large, bright, hot fire. There is nothing in the record from which it can plausibly be argued that the Bradys should have anticipated that invitees would be forgetful about this danger when in its proximity. *See id.*

Third, there is no reasonable argument that the Bradys should have anticipated that invitees would conclude that the advantages from encountering the danger outweighed the risk. To argue the application of this circumstance here, Grimes asserts that "the advantages of ensuring children are not unattended near a firepit would outweigh the apparent risk of slipping on a hill." Reply Br. of Appellant at 4. But even if true, the question is not whether Grimes made that particular assessment of risk on September 5, 2019, the question is whether the evidence (in the light most

favorable to Grimes) shows that the Bradys would have reason to expect that an invitee would have made the type of assessment that is contemplated by this third circumstance discussed in *Tincani*. We see no such evidence in the record.

For example, we see no similarity of the facts in this case to those in this court's recent decision in *Mihaila v. Troth*, 21 Wn. App. 2d 227, 505 P.3d 163 (2022). In *Mihaila*, an invitee was on the property to install a new roof on a backyard shed when he fell from a ladder and was gravely hurt by a metal grounding rod (a known and obvious hazard). *Id.* at 229. This court held that there were genuine issues of material fact as to whether (under the third circumstance from *Tincani*) the property owner should have anticipated that the invitee would encounter the risk, notwithstanding it being known and obvious, because the invitee wanted to finish, and receive payment for, the work—work the owner obviously knew about because the owner had hired the invitee. *Id.* at 236-37. Here, unlike *Mihaila*, there is no connection between the Bradys and the type of risk-balancing an invitee might make for this known and obvious hazard such that the Bradys should have anticipated the decision.

Still, Grimes contends that the three circumstances outlined in *Tincani* are not exclusive and that Bradys' liability should not be limited by an analysis of them. But even though it is true that the three circumstances appear to be nonexclusive examples, they nonetheless provide the relevant context to evaluate whether a property owner should anticipate the harm from a known or obvious danger. *See Tincani*, 124 Wn.2d at 139-40. And having now concluded that these facts do not fit any of the three circumstances, we are unpersuaded that this case represents yet a fourth circumstance. Even viewing all of the facts in a light most favorable to Grimes, the danger of the fire was obvious. In fact, due to the general characteristics of fire—bright, hot, and instantly

11

painful to the touch—its dangerousness is obvious to all reasonable people. In this case, the Bradys were entitled to assume that Grimes would have protected herself from the harm.

> If [the invitee] knows the actual conditions, and the activities carried on, and the dangers involved in either, [they are] free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify [the invitee] in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that [they] will protect [themselves] by the exercise of ordinary care, or that [they] will voluntarily assume the risk of harm if [they do] not succeed in doing so.

Restatement (Second) of Torts § 343A cmt. e.

As a result, the Bradys did not owe a duty of care to Grimes and the superior court did not err in granting summary judgment on this basis.[5]

## IV. THE SUPERIOR COURT'S DISMISSAL OF CLAIMS AGAINST GROUP 7

Grimes has a separate argument against Group 7. Grimes contends that Group 7 merely "joined" the Bradys' motion and, in so doing, failed to expressly move for dismissal of claims against it and set forth the reasons as to why they were entitled to dismissal. Petitioner's Opening Br. at 1. Thus, Grimes argues that "regardless of the outcome of the claims against the Bradys, claims against [Group 7] must be reinstated . . . ." Petitioner's Opening Br. at 25.

Our conclusion that the Bradys owed no duty to Grimes resolves this issue. It is true that Group 7's joinder to the Bradys' motion for summary judgment failed to expressly move for dismissal of claims against it. But while it would have been prudent for Group 7 to "join" the Bradys' motion with a pleading that overtly moved for that relief, it makes no difference in this

---

[5] Because the Bradys fundamentally owed no duty to protect Grimes from fires in the firepit, we need not address Grimes' alternative argument that the superior court erred in adopting the " 'tenant[-]created danger' theory." Petitioner's Opening Br. at 20.

particular case. A review of Grimes' complaint shows that there was no independent claim pled against Group 7. The basis for liability against Group 7 appears to be entirely derivative of Grimes' claims against the Bradys (by alleging that Group 7 was the agent of the Bradys). As pled in the complaint, there could be no breach by Group 7 without an underlying breach of duty by the Bradys. Thus, we affirm the superior court's dismissal of claims against Group 7.

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

VELJACIC, A.C.J.

MAXA, J.