

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| KAYLYNN LAREAU, | ) | |
| | ) | No. 39738-6-III |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS GREENE and MARY | ) | UNPUBLISHED OPINION |
| HENDERSON-GREENE, individually | ) | |
| and as husband and wife and their marital | ) | |
| community; GORDON SCOTT | ) | |
| BRAKER, an individual, | ) | |
| | ) | |
| Respondents. | ) | |

STAAB, J. — Kaylenn Lareau was injured after falling down a stairway in a rental home where she was living. Although she did not sign the lease agreement, she sued the landlords, Thomas Greene and Mary Henderson-Greene (Greenes), for negligence claiming the stairway was a dangerous condition and violated the implied warranty of habitability. On the eve of trial, the court granted the Greenes' motion for judgment as a matter of law, concluding that the Greenes did not owe Lareau a duty to inspect or repair the stairway, and dismissed the case with prejudice.

We reverse. Under the facts of this case, the Greenes owed Lareau a duty of care under the implied warranty of habitability. Furthermore, Lareau presented facts that,

when viewed in the light most favorable to her, created genuine issues of material fact as to whether the stairs were dangerous and whether the Greenes had notice of the condition. Thus, judgment as a matter of law was improper. We decline to award attorney fees at this stage without prejudice as to whether they can be awarded following resolution of the case.

## BACKGROUND

Since the trial court dismissed Lareau's implied warranty of habitability claim on the Greenes' CR 50 motion for judgment as a matter of law using a summary judgment standard, the following facts are set forth in a light most favorable to Lareau.

The Greenes owned a rental house in Spokane from 1990 to 2019. The house was built in 1909. The Greenes never resided in the house. The house consisted of a main floor with a loft and a basement. A stairway connected the main floor to the basement, where there was a washer and dryer, a living area, and storage. The stairway was not in compliance with the current building codes in-part because its risers were too tall, its treads were exceptionally narrow, its risers and treads varied excessively, and its treads sloped downward.

The Greenes rented the house to Gordon Scott Braker for at least a decade. The relevant lease agreement began in September 2016. The lease contemplated that the house would be occupied by "Scott Braker + Roomate [sic]," and the Greenes allowed Braker to have additional roommates for durations less than the one-year lease term.

2

The Greenes and Braker did not strictly follow the lease agreement. For instance, the Greenes designated Braker "as the resident manager of the house for purposes of repairing and maintaining the house, choosing who lived there, and collecting and paying rent to the Greenes." Clerk's Papers (CP) at 81. Braker also performed work on the house under the direction and supervision of the Greenes. The Greenes compensated Braker for his work on the house in the form of monthly rent reductions.

In July 2016, Kaylynn Lareau moved into the house as Braker's roommate without signing the lease agreement. She paid monthly rent and a portion of the utility costs to Braker.

At least five months before Lareau moved in, Braker removed the only handrail from the stairway to the basement as part of the ongoing maintenance work he performed for the Greenes. After she moved in, Lareau made several comments to Braker about the stairway being dangerous and asked him to install the handrail.

On December 2, 2016, Lareau, who was then pregnant, lost her footing at the top of the stairway and fell to the bottom, hitting the floor and a concrete wall. When she fell, Lareau extended her arms to absorb the impact of the fall and protect her baby. At the hospital, x-rays revealed that Lareau fractured her left elbow, and had a possible right elbow fracture and possible placental hematoma.

*Procedure*

In 2019, Lareau sued the Greenes for negligence, arguing they breached the duties they owed to her under Washington's Residential Landlord-Tenant Act of 1973 (RLTA), ch. 59.18 RCW and the common law implied warranty of habitability, by failing to inspect and repair the dangerous stairway, which caused Lareau's injuries and resulted in damages.[1]

The parties filed competing motions for summary judgment, which were largely denied. For the most part, these motions were denied.

On the morning of trial, the Greenes filed a CR 50 motion for judgment as a matter of law, contending that they owed no duty to Lareau. To support their argument, the Greenes relied on *Saralegui Blanco v. Gonzalez Sandoval*, 197 Wn.2d 553, 485 P.3d 326 (2021), which held that to establish the existence of a duty in a premises liability claim, the plaintiff must show that the defendant possessed the property. The Greenes argued that because the lease transferred possession and control of the house to Braker, they had no legal duty to inspect or repair the stairway under *Saralegui*.

Later that day, the trial court informed the parties via email that it intended to rule on the Greenes CR 50 motion before any other pretrial motions, and set a briefing schedule and hearing for the motion. In response to the court's email, Lareau filed a

---

[1] Lareau originally named Braker as a co-defendant. However, they later entered a stipulated order of dismissal.

motion to reconsider the denial of her motion for partial summary judgment on the issue of whether the Greenes had a duty to inspect and repair. Ultimately, the court denied Lareau's motion for summary judgment and granted the Greenes' CR 50 motion "from a summary judgment perspective." Rep. of Proc. (RP) (Apr. 17, 2023) at 28. The court later entered its written judgment dismissing Lareau's claims with prejudice.

Lareau timely appeals.

## ANALYSIS

### 1. CR 50 PROCEDURE

As a preliminary matter, we hold that the trial court abused its discretion by considering the Greenes' CR 50 before trial.

"Under CR 50(a)(1), a motion for judgment as a matter of law may be brought [only] after a party has been fully heard with respect to an issue and there is no legally sufficient basis for a reasonable jury to find in favor of the [opposing] party with respect to that issue." *Carlson v. Lake Chelan Cmty. Hosp.*, 116 Wn. App. 718, 729, 75 P.3d 533 (2003). Typically, a CR 50 motion is brought "[d]uring trial, . . . at the end of the plaintiff's case-in-chief, or at the end of all [the] evidence." *Smith v. Fourre*, 71 Wn. App. 304, 307 n.7, 858 P.2d 276 (1993). This is because, "a plaintiff must be given the opportunity to present not just part, but all, of his or her evidence before the trial court rules on the sufficiency of that evidence." *Id.* at 307.

In this case, the trial court granted the Greenes' CR 50 motion "from a summary judgment perspective" before trial began and before Lareau had a chance to present her evidence. RP (Apr. 17, 2023) at 26, 28-29. This was an abuse of discretion.

Despite this procedural irregularity, at the parties' request, we address and decide the substantive legal issues presented in this appeal.

2. IMPLIED WARRANTY OF HABITABILITY

Our review of a trial court's decision under either CR 50 or CR 56 is de novo. *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 530-31, 70 P.3d 126 (2003); *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 722, 425 P.3d 837 (2018). Under either rule, we view the evidence in a light most favorable to the nonmoving party and will affirm judgment only if there is no genuine issue of material fact and judgment is proper as a matter of law. CR 56(c); *Davis*, 149 Wn.2d at 531.

   A. *Existence of Duty Under Implied Warranty of Habitability*

In our State's early history, courts traditionally followed the doctrine of "caveat emptor," or "let the buyer beware," which essentially provided that "tenant[s] rent[ ] property at their own risk," and accordingly that landlords could not be "liable for any injuries . . . tenant[s] suffer[ed] for having taken [the] risk" of renting property. *Gerlach v. Cove Apts., LLC*, 196 Wn.2d 111, 130, 471 P.3d 181 (2020); *see*, *e.g.*, *Teglo v. Porter*, 65 Wn.2d 772, 773, 399 P.2d 519 (1965). Under this doctrine, there was "no implied

6

warranty or covenant on the landlord's part that the premises [were] safe or fit for the

purpose intended." *Teglo*, 65 Wn.2d at 773.

Our Supreme Court upended this doctrine in *Foisy v. Wyman*, 83 Wn.2d 22, 28,

515 P.2d 160 (1973), where the Court ruled that "in all contracts for the renting of

premises, oral or written, there is an implied warranty of habitability." By recognizing

the implied warranty of habitability, the Court "'discarded the very legal foundation and

justification for the landlord's immunity in tort for injuries to the tenant or third

persons.'" *Gerlach*, 196 Wn.2d at 132 (quoting *Sargent v. Ross*, 113 N.H. 388, 397, 308

A.2d 528 (1973)).

In 2001, this court built on *Foisy's* holding by adopting the *Restatement (Second)*

*of Property: Landlord & Tenant* § 17.6 (Am. L. Inst. 1977), which states:

> A landlord is subject to liability for physical harm caused to the tenant and
> others upon the leased property with the consent of the tenant or his
> subtenant by a dangerous condition existing before or arising after the
> tenant has taken possession, if he has failed to exercise reasonable care to
> repair the condition and the existence of the condition is in violation of:
>> (1) an implied warranty of habitability; or
>> (2) a duty created by statute or administrative regulation.[2]

*Lian v. Stalick*, 106 Wn. App. 811, 821-22, 25 P.3d 467 (2001) (*Lian* I). Following *Lian*

I and *Foisy*, this court has repeatedly held that landlords owe a duty to their tenants under

---

[2] The *Gerlach* court did not adopt the theory of liability under subsection (2) of *Restatement* § 17.6 because it is based on a theory of negligence per se, which has been largely abandoned in Washington. *Gerlach*, 196 Wn.2d at 134.

the "implied warranty of habitability" to exercise reasonable care to repair dangerous conditions on the leased property. *See*, *e.g.*, *Lian v. Stalick*, 115 Wn. App. 590, 595, 62 P.3d 933 (2003) (*Lian* II); *Martini v. Post*, 178 Wn. App. 153, 168-71, 313 P.3d 473 (2013).

More recently, our Supreme Court clarified that the duty of a landlord under the "common law implied warranty of habitability" extends not just to tenants, but also to their guests. *Gerlach*, 196 Wn.2d at 129-30. In *Gerlach* the court expressly adopted a cause of action for tenant's guests under the implied warranty of habitability as set forth in the *Restatement* § 17.6, which provides that a "'landlord is subject to liability . . . to the tenant *and others upon the leased property with the consent of the tenant*'" or his subtenant. *Gerlach*, 196 Wn.2d at 127-28 (quoting *Restatement* § 17.6).

The Greenes contend that they did not owe a duty to Lareau under the implied warranty of habitability because Lareau was not their tenant. They point to evidence that she did not sign the lease and suggest that, if anything, she was Braker's tenant. The Greenes do not dispute that Lareau was on the property with the consent of Braker. Under *Gerlach*'s expansion of the implied warranty of habitability to guests and others upon the leased property with the consent of the tenant, this dispute is immaterial for

8

purposes of determining whether a duty under the implied warranty of habitability exists.[3] *Id.*

"[W]hether a landlord is liable to a tenant's guest for injuries caused by the landlord's breach of the implied warranty of habitability is a straightforward question of common law negligence." *Id.* at 132. A negligence cause of action "requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994).

The Greenes raise several arguments as to why *Gerlach* should not control. First, they contend that *Gerlach* lacks precedence because it was not unanimous. This argument fails because we are bound to follow *majority* opinions of our Supreme Court. *State v. Gore*, 101 Wn.2d 481, 486-87, 681 P.2d 227 (1984). A majority of justices joined the opinion in *Gerlach*; thus, it binds this court. *See Gerlach*, 196 Wn.2d at 136.

The Greenes also argue the *Gerlach's* discussion of the implied warranty of habitability was dicta. We disagree. "'Dicta' is 'language [that is] [un]necessary to the decision in a particular case.'" *Messersmith v. Town of Rockford*, 26 Wn. App. 2d 699, 704, 529 P.3d 427 (2023) (internal quotation marks omitted) (quoting *ADCI Corp. v.*

---

[3] We note that whether Lareau was a tenant of the Greenes, or a third party beneficiary of the lease between the Greenes and Braker may be an issue if Lareau later seeks attorney fees under the lease.

*Nguyen*, 16 Wn. App. 2d 77, 86, 479 P.3d 1175 (2021)). In *Gerlach*, adopting

*Restatement* § 17.6 was necessary because the jury found for the plaintiff using "a verdict

form that did not distinguish between negligence premised on [the defendant's] common

law duties and negligence premised on [the defendant's] duties under the RLTA."

*Gerlach*, 196 Wn.2d at 118, 135. The majority rejected the dissent's argument that the

Court's expanded analysis of the implied warranty of habitability was dicta. *See id*. at

136 (Gordon McCloud, J. dissenting in part). Ultimately, the *Gerlach* court concluded

that the implied warranty of habitability supported the jury's verdict. *Id.* at 135-36.

The Greenes also cite to *Phillips v. Greco*, 7 Wn. App. 2d 1, 433 P.3d 509 (2018)

and *Pruitt v. Savage*, 128 Wn. App. 327, 115 P.3d 1000 (2005) to argue they owed no

duty to Lareau. However, these cases predate *Gerlach*. In both cases, the plaintiffs could

not bring a claim for breach of the implied warranty of habitability against the landlords

because Washington courts had not yet fully adopted *Restatement* § 17.6, which extends

the claim to anyone on the property with the tenant's consent, not just the tenant.

*Phillips*, 7 Wn. App. 2d at 7 ("Phillips does not cite to any Washington authority that has

extended the implied warranty of habitability of section 17.6 to persons other than

tenants."); *Pruitt*, 128 Wn. App. at 331 ("[T]he parties do not cite, and we have not been

able to find, a Washington case that extends [implied warranty of habitability claims] to

persons not the tenant.").

Next, the Greenes argue that *Gerlach* did not address the issue presented here: whether the Greenes had a duty to repair a condition allegedly made dangerous by another tenant. While *Gerlach* did not address this particular issue, its holding is still applicable and nothing in the decision suggests that the implied warranty of habitability would not apply under these circumstances. The Greenes do not cite any authority suggesting that Braker's removal of the handrail absolves them of liability under the implied warranty of habitability. *Restatement* § 17.6 imposes no such limitation and applies to dangerous conditions that develop after a tenant takes possession without regard to the cause of the condition. We see no reason that landlords should be immune from liability if they have actual or constructive knowledge of dangerous conditions that violate the implied warranty of habitability, regardless of the cause of the conditions. Moreover, the evidence here is sufficient to raise a genuine issue of material fact as to whether Braker was acting as the Greenes' agent when he removed the handrail and when Lareau asked him to replace the handrail.

The Greenes argue, as they did below, that in any premises liability case the plaintiff must first establish that the defendants were in possession of the property. The Greenes rely primarily on *Saralegui Blanco*, 197 Wn.2d at 554 to argue that in order to establish a duty in a premises liability claim, the plaintiff must show that the defendant possessed the property, and that a landlord transfers possession and control to the tenants.

The Greenes asserted that possession of the house transferred to Braker when he signed the lease and that, therefore, they owed no legal duty to inspect or repair the stairway.

*Saralegui* is inapposite because it addressed a duty based on a premises liability theory, and the court expressly declined to reach the plaintiff's implied warranty of habitability theory of liability. *Saralegui*, 197 Wn.2d at 557 n.2. Premises liability claims are distinct from implied warranty of habitability claims. *See Phillips*, 7 Wn. App. 2d at 6-7 (explaining that cases involving implied warranty of habitability claims "are landlord versus tenant cases decided under property law principles, not a licensee versus possessor case decided under tort law principles."). Premises liability claims depend on possession and control of the property and the status of the injured party, whereas implied warranty of habitability claims arise from the contract between the landlord and tenant. *See Phillips*, 7 Wn. App. 2d at 5-7; *see also Foisy*, 83 Wn.2d at 26; *compare* RESTATEMENT (SECOND) OF PROPERTY § 17.6 *with* RESTATEMENT (SECOND) OF TORTS §§ 342, 343 (AM. L. INST. 1965).

Here, the trial court erred in concluding that Lareau failed to establish that the Greenes owed her a duty. As Braker's landlord, the Greenes owed a common law duty under the implied warranty of habitability to Braker and any guests or subtenants of Braker.

B.  *Issues of Material Fact*

The Greenes also argue that, even if they owed a duty under the implied warranty of habitability, Lareau failed to produce evidence sufficient to create a genuine issue of material fact that the stairs were dangerous and the Greenes had notice of the dangerous condition.  We disagree.

While the existence of a duty is a question of law, breach and causation are typically questions of fact for the jury.  *Briggs v. Pacificorp*, 120 Wn. App. 319, 322, 85 P.3d 369 (2003).  "Once it is determined that a legal duty exists, it is generally the jury's function to decide the foreseeable range of danger, thus limiting the scope of that duty."  *Id*.

A plaintiff alleging negligence under the implied warranty of habitability negligence must show:

> (1) that the condition was dangerous, (2) that the landlord was aware of the condition or had a reasonable opportunity to discover the condition and failed to exercise ordinary care to repair the condition, and (3) that the existence of the condition was a violation of an implied warranty of habitability.

*Lian* II, 115 Wn. App. at 595.

Generally, "the implied warranty of habitability . . . applies whenever the defects in a particular dwelling render it uninhabitable or pose an actual or potential safety hazard to its occupants."  *Lian* I, 106 Wn. App. at 818 (citation omitted).

Lareau presented evidence to show an actual or potential safety hazard to the occupants. Lareau submitted an expert report to the trial court that identified multiple safety hazards with the stairway. The expert found the stairway to be "unreasonably dangerous" because its risers were too tall, its treads were exceptionally narrow, its risers and treads varied excessively, its treads sloped downward, and the handrail was missing. Further, the expert explained that the stairway needed handrails on both sides of the stairs to make the stairway safe.

During discovery, Braker admitted that the "stairway was a dangerous condition . . . because of the narrow tread depths, tall riser heights, and steepness of the stairs." CP at 82. Braker also admitted that the lack of handrails on the stairway increased the danger and risk to anyone who lost their footing on the stairs. In his deposition, Braker testified that he told "all the guests, regardless if the handrail is there or not, that those stairs are very steep." CP at 298. Additionally, Lareau presented Mr. Greene's admission that the stairway should have had a handrail at the time of Lareau's fall.

The Greenes contend they had no duty to redesign or rebuild the stairway because it was compliant with the code that existed when it was built. The Greenes point to their expert's report stating that despite the stairway's old age, it was exempted from having to comply with current code. This argument fails. This court has held that a parties' "attempt to use the building code as a litmus test to confine the types of cases that will fall under the protection of the implied warranty is inconsistent with [Washington

14

Supreme Court precedent holding] that there are no brightline tests" for determining which defects are within the realm of violating the implied warranty. *Westlake View Condo. Ass'n v. Sixth Ave. View Partners, LLC*, 146 Wn. App. 760, 770, 193 P.3d 161 (2008).

Viewing these facts in a light most favorable to Lareau, a genuine issue of material fact exists regarding the dangerousness of the stairway. *See Id.* at 771 ("Whether [the defects alleged by the plaintiff] rise to the level of breaching the implied warranty of habitability is a question for the jury.").

The Greenes also contend that there is no evidence that they had notice of the dangerous condition. A landlord is subject to liability under the implied warranty of habitability "'only for conditions of which he is aware, or of which he could have known in the exercise of reasonable care.'" *Lian* II, 115 Wn. App. at 596 (quoting RESTATEMENT § 17.6, cmt. c). Stated another way, "in some circumstances a landlord may be liable under *Restatement* § 17.6 if he is aware of the condition, has reasonable opportunity to remedy the condition, and then makes *no* attempt to remedy the condition." *Lian* II, 115 Wn. App. at 597. This is a notice requirement. *Id*.

Despite the Greenes' vehement denial that they did not know about the dangerous condition of the stairway, Lareau presented evidence that raises a genuine issue of material fact. Braker admitted in discovery that he believed Mr. Greene knew about the dangerous stairway. Lareau also declared that Mr. Greene entered the house and went

15

down into the basement at least once while she lived there. Viewing these facts and the reasonable inferences from them in a light most favorable to Lareau, a material issue of fact existed as to whether the Greenes had actual knowledge of the stairway's condition. Thus, this issue should have gone to the jury.[4]

Similarly, Lareau also presented facts that, viewed in the light most favorable to her, raised a genuine issue of material fact as to whether the Greenes had constructive notice of the stairway's dangerous condition. A plaintiff can establish constructive notice of a dangerous condition that violates the implied warranty of habitability in two ways, which are relevant to this case. First, "'[o]rdinarily, the landlord will be chargeable with notice of conditions which existed prior to the time that the tenant takes possession.'" *Id*. at 596 (quoting RESTATEMENT § 17.6, cmt. c). Second, "'[w]here the landlord is able to discover the condition by the exercise of reasonable care, he is subject to liability after he has had a reasonable opportunity to discover the condition and to remedy it.'" *Id*. (quoting *Restatement* § 17.6, cmt. c).

Regarding the second method of establishing constructive notice, Lareau submitted testimony from Mr. Greene in which he stated that he did not inspect the house during Braker's ten-year tenancy and did not step foot inside the house in 2016. Lareau

---

[4] Beyond establishing that the stairs were dangerous, Lareau must also prove that the stairs violated the implied warranty of habitability. RESTATEMENT § 17.6 cmt. e, illus. 1. The Greenes do not challenge Lareau's evidence on this element and our decision here does not address this element.

further declared that she made several comments to Braker about the safety of the stairs and asked him to install a railing.  Additionally, Mr. Greene stated that he relied on Braker to inform him if there were any issues with the house, which Mr. Greene would then address.

Viewed in a light most favorable to Lareau, there was a genuine issue of material fact as to whether the Greenes had constructive notice of the stairway's condition after having had a reasonable opportunity to discover and remedy it.  *See Fredrickson v. Bertolino's Tacoma, Inc.*, 131 Wn. App. 183, 189, 127 P.3d 5 (2005) ("Ordinarily, it is a question of fact for the jury whether, under all of the circumstances, a defective condition existed long enough so that it would have been discovered by an owner exercising reasonable care.").

The trial court erred when it granted summary judgment in favor of the Greenes after concluding that the Greenes did not owe Lareau a duty under the implied warranty of habitability.  In addition, Lareau produced evidence sufficient to raise a material issue of fact of each of the disputed elements of her claim.

3.   ATTORNEY FEES ON APPEAL

Lareau requests her attorney fees on appeal under RAP 18.1(a) as well as the attorney fee provision in the lease agreement between the Greenes and Braker, and that we direct the trial court to include these fees in any final award if she prevails at trial. The Greenes respond, arguing that Lareau is not entitled to attorney fees because her

implied warranty of habitability claim does not arise from a breach of the lease agreement and she lacks standing to request attorney fees because she is not a party to the lease agreement.

At this point, we decline to award Lareau her attorney fees on appeal because it would be premature and there may be issues of fact that need to be decided. *See Landis & Landis Const., LLC v. Nation*, 171 Wn. App. 157, 168, 286 P.3d 979 (2012). Our decision does not preclude Lareau from seeking attorney fees if she prevails at trial, but we make no decision on whether such fees are authorized.

Reversed and Remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

I CONCUR:

_____
Lawrence-Berrey, C.J.

No. 39738-6-III

COONEY, J. (concurring) — I concur with the majority's conclusion, but write separately to accentuate the asperities of review due to the multifarious procedural abnormalities.

The RAPs are intended to promote the reasoned dispositions of legal issues as the merits of the case and the interest of justice may require. *Rich v. Starczewski*, 29 Wn. App. 244, 250, 628 P.2d 831 (1981); RAP 12.2. Likewise, the RAPs are not designed to place unjustified financial burdens on the parties. *Id.* To that end, I agree with the majority's decision to resolve the issues presented in this appeal.

BACKGROUND

On the scheduled first day of trial, April 10, 2023, and after two unsuccessful attempts to have Kaylynn Lareau's claim dismissed on summary judgment, Thomas Greene and Mary Henderson-Greene filed a motion for judgment as a matter of law under CR 50.[1] Ms. Lareau responded to the motion, and filed a motion for reconsideration of the court's earlier order that denied her motion for partial summary judgment.

It appears the filing of the CR 50 motion resulted in the court continuing trial for one week. The court heard both motions on April 17, 2023. At the conclusion of the

---

[1] Trial was scheduled to begin on April 3, 2023. At a hearing on March 28, 2023, trial was continued to April 10, 2023, due to a conflict in the court's schedule. It appears that trial was then continued to begin on April 17, 2023.

hearing, the court denied Ms. Lareau's motion for reconsideration and granted the

Greenes' CR 50 motion:

> [W]ith respect to Defendants' motion, either -- when you consider the facts in the light most favorable to the nonmoving party, which of course here would be the plaintiff, or if you were to just look at it from a summary judgment perspective, based on my earlier ruling, my review of the entire electronic file, my review of current case law, I am going to grant Defendants' motion as well.

Rep. of Proc. (RP) (Apr. 17, 2023) at 28. The court's oral ruling was followed by a

written order, dated April 24, 2023. Contrary to the court's oral ruling[2] that it had

decided the Greenes' CR 50 motion on "review of the entire electronic file," the written

order stated the motion was decided on:

> [T]he records and files herein, the case law cited by the parties, and the following briefing from the parties presented on the motion:
> 1. Defendants' Motion for Judgment as a Matter of Law Seeking Dismissal of Plaintiffs Claims With Prejudice;
> 2. Plaintiff's Motion for Reconsideration of Order Denying Plaintiff's Motion for Partial Summary Judgment on Defendant [Greenes'] Duty to Inspect and Repair;
> 3. Plaintiff's Response to Defendants' Motion for Judgment as a Matter of Law; and
> 4. Defendants' Reply Brief Supporting Judgment as a Matter of Law.

---

[2] Unless an oral decision is formally incorporated into the findings of fact, conclusions of law, and judgment, it has no final or binding effect. *Stiles v. Kearney*, 168 Wn. App. 250, 258, 277 P.3d 9 (2012). "[I]f an oral decision conflicts with a written decision, the written decision controls." *Id.* (citing *Ferree v. Doric Co.*, 62 Wn.2d 561, 567, 383 P.2d 900 (1963)).

RP (Apr. 17, 2023) at 26; Clerk's Papers (CP) at 462-63. This order is before us on appeal.

ANALYSIS

CR 50—JUDGMENT AS A MATTER OF LAW

The trial court improperly granted the Greenes' judgment under CR 50. In part, CR 50(a) provides:

> If, *during a trial by jury, a party has been fully heard with respect to an issue* and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against the party on any claim . . . that cannot under the controlling law be maintained without a favorable finding on that issue.

(Emphasis added.) It is undisputed that the court granted judgment in favor of the Greenes prior to a jury trial and before it afforded Ms. Lareau the opportunity to be fully heard with respect to her claim. This was error that warrants reversal. Our review should end here.

CR 56—SUMMARY JUDGMENT

Perhaps in recognition that reversal of the CR 50 order was imminent, the parties invited us to review the CR 50 order under the guise of CR 56. However, similar to their lack of compliance with CR 50, the Greenes failed to comply with the provisions of CR 56.

We review CR 50 and CR 56 orders de novo and view the evidence in a light most favorable to the nonmoving party. *Butson v. Dep't of Labor & Indus.*, 189 Wn. App. 288, 296, 354 P.3d 924 (2015) ("This court reviews a trial court's CR 50 decision de novo."); *Schmidt v. Coogan*, 162 Wn.2d 488, 491, 173 P.3d 273 (2007) ("Judgment as a matter of law is not appropriate if, after viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences, substantial evidence exists to sustain a verdict for the nonmoving party."); *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015) ("We review orders on summary judgment de novo."); *Barber v. Bankers Life & Cas. Co.*, 81 Wn.2d 140, 142, 500 P.2d 88 (1972) ("[W]here a motion is made for summary judgment, it is the duty of the trial court to consider all evidence and all reasonable inferences therefrom in a light most favorable to the nonmovant."). However, these two aspects of review are where the similarities begin and end.

A motion under CR 50 does not become ripe until "during a trial by jury, a party has been fully heard with respect to an issue." CR 50(a)(1). Contrarily, a motion under CR 56 must be filed and served on the opposing party at least 28 calendar days before the hearing. CR 56(c). The motion must then be heard at least 14 calendar days before trial. *Id*.

Here, the Greenes failed to comply with both rules. Their CR 50 motion was brought in advance of trial and therefore was not ripe. The trial court commented that it was "look[ing] at it from a summary judgment perspective." RP (Apr. 17, 2023) at 26.

4

However, the motion was filed on the first day of trial and was not filed and served on Ms. Lareau at least 28 calendar days before trial, in violation of CR 56(c). Moreover, the motion was heard one week after trial was scheduled to commence, not at least 14 days before trial. The Greenes' motion was not properly before the court under either CR 50 or CR 56.

The most problematic aspect of attempting to review the order under the guise of CR 56 is the lack of compliance with CR 56(h). CR 56(h) mandates: "The order granting or denying the motion for summary judgment *shall designate the documents and other evidence called to the attention of the trial* court before the order on summary judgment was entered." (Emphasis added.) Here, the CR 50 order states the court reviewed four documents plus "the records and files herein, the case law cited by the parties, and the following briefing from the parties presented on the motion." CP at 462. Contrary to the written order, the court commented it had reviewed the "entire electronic file." RP (Apr. 17, 2023) at 26.

To compound the problem, the "entire electronic file" the court supposedly relied on was not designated for our review. RP (Apr. 17, 2023) at 26. "An appellate court would not be properly accomplishing its charge if the appellate court did not examine *all* the evidence presented to the trial court." *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Here, each document filed with the county clerk was assigned a sub number (SN). Ms. Lareau's summons and complaint is listed as "SN: 1." CP at 1.

No. 39738-6-III
*Lareau v. Greene (Concurrence)*

Her notice of appeal of the CR 50 order is designated "SN: 218." CP at 464. Presumably, 218 documents had been filed between the time this case was initiated and now before this court on review. However, the parties designated only approximately 70 documents for our review. Not only are we unsure what constitutes the "entire electronic file," it is unlikely the "entire electronic file" has been provided for our review. RP (Apr. 17, 2023) at 26. Without the "entire electronic file," we are unable to accomplish our goal of providing a reasoned disposition of legal issues presented to us by examining all the evidence presented to the trial court. *Id.*

_____
Cooney, J.

6